UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| EFREN RICARDO MARTINEZ, | Case No.: 14cv3043 BTM(WVG) |
|---|---|
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, VACATING ALJ'S DECISION, AND REMANDING FOR FURTHER PROCEEDINGS** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

In this action, Plaintiff Efren Ricardo Martinez seeks review of the Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits. Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's motion for summary judgment, **VACATES** the Commissioner's decision, and **REMANDS** for further proceedings.

**I. PROCEDURAL BACKGROUND**

On February 25, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December

1

14cv3043 BTM(WVG)

31, 2010.  Plaintiff's claim was denied initially on November 7, 2011, and upon reconsideration on June 25, 2012.

On May 8, 2013, Plaintiff's claim was heard by Administrative Law Judge Gail Reich (the "ALJ").  On July 18, 2013, the ALJ issued a decision denying benefits.  Plaintiff filed a request for review with the Appeals Council, which was denied on October 28, 2014.  The ALJ's decision then became the final decision of the Commissioner of Social Security.  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. **ALJ'S FINDINGS AND CONCLUSIONS**

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.[1]

At the outset, the ALJ found that Plaintiff met the insured status requirements

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity?  If so, then the claimant is not disabled.  If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe?  If not, then the claimant is not disabled.  If so, then the evaluation proceeds to step three.  (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404?  If so, then the claimant is disabled.  If not, then the evaluation proceeds to step four.  (4) Is the claimant able to do any work that she has done in the past?  If so, then the claimant is not disabled.  If not, then the evaluation proceeds to step five.  (5) Is the claimant able to do any other work?  If not, then the claimant is disabled.  If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

of the Social Security Act through December 31, 2014.  (AR 12.)

The ALJ then found that Plaintiff had not engaged in substantial gainful activity since December 31, 2010, the alleged onset date.

Next, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post fusion surgery.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   The ALJ explained:

> The claimant does not meet or equal Medical Listing 1.04 because he does not have a combination of evidence involving nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with muscle weakness), accompanied by sensory or reflex loss and positive straight-leg raising test; or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, both established by appropriate medical acceptable imaging.

(AR 22-23.)

At step five, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except with the ability to adjust positions every 30 minutes. The ALJ found not credible Plaintiff's testimony that he cannot work full-time due to back problems.

Based on the testimony of the vocational expert, the ALJ found that Plaintiff is able to perform past relevant work as a real estate agent.  The ALJ also determined that Plaintiff is able to perform other jobs existing in the national

economy such as box printer (DOT No. 652.682-010), office assistant (DOT No. 209.562-010), appointment clerk (DOT No. 237.367-010), front desk receptionist (DOT No. 237.367-038), and receptionist host reader (DOT No. 667-010).

Therefore, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.

### III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed and that this matter should be remanded for further proceedings because: (1) the ALJ

failed to make findings regarding Plaintiff's mental impairments and asthma at step two of the sequential analysis; (2) the ALJ's credibility determination was legally erroneous and unsupported by substantial evidence; and (3) the ALJ's step four and step five determinations were unsupported by substantial evidence because the ALJ did not include in the hypothetical posed to the vocational expert restrictions resulting from Plaintiff's mental impairments and asthma.  As discussed below, the Court finds that remand is appropriate so that the ALJ can further develop the record regarding whether Plaintiff's mental impairments and asthma are "severe" and whether they result in any functional limitations.[2]

A. <u>Evidence of Mental Impairment</u>

On July 1, 2010, Plaintiff followed up with his primary care physician, David Michael Kaiden, M.D., after having been admitted to Palomar Medical Center for left-sided numbness and discomfort.  (AR 55.)  Dr. Kaiden noted that Plaintiff was having trouble sleeping, having panic attacks, mood swings, emotional labilitiy,

---

[2] Plaintiff contends that the ALJ's credibility determination was erroneous but does not ask the Court to apply the "credit-as-true" rule.  See Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014).  Instead, Plaintiff's challenge to the ALJ's credibility determination is another ground for remand for further proceedings.  Because the Court reverses the ALJ's decision and remands based on the ALJ's failure to give proper consideration to Plaintiff's mental impairment and dyspnea/asthma, there will be a new hearing, and the Court finds it unnecessary to reach the credibility issue.

trouble focusing, and mild anhendonia. (AR 554.) Upon examination, Dr. Kaiden observed: "His mood appears not anxious. He exhibits a depressed mood. He is apathetic." (AR 555.) Dr. Kaiden wrote "ANXIETY DISORDER (primary encounter diagnosis)  Note: vs MDD with anxious features." (Id.) Dr. Kaiden prescribed Citalopram. (Id.)

On February 15, 2012, Plaintiff saw Dr. Kaiden, complaining of shortness of breath, cough, and chest pain. (AR 420.) Dr. Kaiden noted that the dyspnea had been chronic for a year without a clear cause, but that Plaintiff "[h]as been noted to have anxiety in the past." (AR 422.)

On February 24, 2012, Plaintiff was treated by Carolyn Jean Ball, P.A. (AR 585.)  Her progress notes state that Plaintiff scored 18 on Depression Patient Health Questionnaire 9 (PHQ9) and that Plaintiff has "moderately severe depression." (Id.)  She discussed treatment options with Plaintiff, including depression resources and follow-up with his primary care physician regarding antidepressant medication. (Id.) The progress note indicates that Plaintiff's Citalopram prescription was discontinued because Plaintiff could not tolerate the side effects. (AR 588.)

The PHQ9 shows that Plaintiff reported: he had little interest or pleasure in doing things more than half the time; felt down, depressed, and hopeless more than half the days; had trouble falling or staying asleep more than half the days;

had poor appetite nearly every day; felt bad about himself more than half the days; and had trouble concentrating and experienced anxiety and restlessness nearly every day. (AR 487.) Plaintiff reported that he had a history of depression which started in 1998 when he suffered a back injury. (Id.) "Has tried various antidepressants over the years but they never seemed to help and he didn't like the side effects." (Id.)

On March 27, 2012, Ms. Ball followed up with Plaintiff. (AR 600.) at this time, Plaintiff stated that he was feeling better and that his spirits had improved. (Id.) The progress note states, "negative for major depression." (Id.)

On September 7, 2012, Plaintiff saw Dr. Kaiden, complaining of fatigue, dizziness, and headache. (AR 642.) Plaintiff denied depressive symptoms, and Dr. Kaiden observed that his mood and affect were normal. (AR 643.)

B. Treatment of Dyspnea/Asthma

On January 5, 2012, Plaintiff was seen by Thomas Kyung Hwan Ro, M.D., for chest discomfort and shortness of breath, which he reported having for about a year. (AR 382.) On January 23, 2012, Plaintiff reported to Dr. Kaiden that he had experienced shortness of breath for several years on and off, typically with exertion such as going up the stairs. (AR 399.) Plaintiff's examination was positive for shortness of breath. (AR 403.) Dr. Kaiden's primary encounter diagnosis was

dyspnea. (AR 404.)

On February 17, 2012, Plaintiff was seen by Beau Vance Duwe, M.D. (AR 426.) Plaintiff complained of shortness of breath over the past year. He reported that he gets short of breath taking stairs, sitting, and reading and that his symptoms occur every day and last until he moves around. (AR 426.) Plaintiff explained that when he gets short of breath, he develops sharp pain lasting a few minutes. (AR 427.) He also reported hearing wheezing from time to time. (AR 427.) Dr. Duwe's examination of Plaintiff was positive for cough, shortness of breath, and wheezing. (AR 428.) Dr. Duwe's primary encounter diagnosis was "shortness of breath." (AR 429.) Dr. Duwe prescribed a trial of Combivent. (AR 430.)

On February 23, 2012, Plaintiff reported that the Combivent was helping with his shortness of breath and wheezing. (AR 581.)

On March 15, 2012, Plaintiff followed up with Dr. Duwe. Plaintiff reported that although there was a little improvement in his shortness of breath and less wheezing after using Combivent, he still had episodes of chest pain and tightness throughout the day and shortness of breath when reading in addition to a dry cough. (AR 592.) Dr. Duwe's examination of Plaintiff was positive for chest pain, cough, shortness of breath, and wheezes. (AR 594.) The progress note indicates a primary encounter diagnosis of asthma. (AR 595.) Dr. Duwe prescribed a trial of Dulera and suggested that Plaintiff consider bronchoscopy if there was no

8

14cv3043 BTM(WVG)

1   improvement.  (Id.)

2        On May 18, 2012, Plaintiff had another follow-up appointment with Dr. Duwe. Plaintiff continued to complain of shortness of breath going up stairs or walking 25-30 minutes.  (AR 626.)  Dr. Duwe's examination was positive for shortness of breath but negative for coughing or wheezing.  (AR 628.)  Dr. Duwe recommended that Plaintiff continue using Combivent but consider discontinuing Dulera.  (AR 629.)  Dr. Duwe offered bronchoscopy to rule out endobronchial cause, but Plaintiff declined.  (AR 629.)

### C. ALJ's Failure to Address Plaintiff's Mental Impairment and Dyspnea/Asthma

     At step two of the disability determination, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In this case, the ALJ's step-two analysis focused solely on Plaintiff's back issue. The ALJ did not make any reference to Plaintiff's mental impairment or dyspnea/asthma.  The ALJ's failure to consider whether Plaintiff's mental impairment and dyspnea/asthma rise to the level of a medically severe impairment, either separately or in combination with other impairments, constitutes error and requires a remand for further proceedings.

//
//

### 1. Plaintiff's Mental Impairment

In determining whether a claimant has a medically severe mental impairment, the ALJ is bound by 20 C.F.R. § 404.1520a, which requires the reviewer to (1) determine whether the claimant has a medically determinable mental impairment; (2) rate the degree of functional imitation for four functional areas (activities of daily living; social functioning; concentration persistence, or pace; and episodes of decompensation); (3) determine the severity of the mental impairment (based in part on the ratings of degree of functional limitation); and (4) if it is found that the claimant has a severe mental impairment, determine whether it meets or is equivalent in severity to a listed mental disorder.

The ALJ must complete a Psychiatric Review Technique Form ("PRTF") and "append it to the decision" or "incorporate its mode of analysis" into the ALJ's findings and conclusions. Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). Failure of an ALJ to document the pertinent findings and conclusions required in application of the technique, including findings as to the degree of limitation in the four functional areas, constitutes legal error. Id. at 726-727. The error is not harmless if the claimant has a "colorable claim of mental impairment." Id. at 726.

Here, there is no evidence that a PRTF was ever filled out. The ALJ did not make any mention of Plaintiff's mental impairment, let alone make findings

consistent with 20 C.F.R. § 404.1520a.  The ALJ's error was not harmless because Plaintiff has a colorable claim of mental impairment based on the medical records discussed above, which show that Plaintiff was treated for anxiety/depression in July 2010 and February 2012.  Although there is nothing in the record showing that Plaintiff experienced depression or anxiety after his episode of depression in February 2012, Plaintiff reported a history of depression.

The Court notes that Plaintiff did not indicate that he suffered from a mental impairment when applying for benefits.  (AR 182; 248.)  Nor did Plaintiff's attorney argue that Plaintiff suffered from a mental impairment at the hearing.  Nonetheless, the ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted).  "This duty extends to the represented as well as to the unrepresented claimant."  Id.  Therefore, the ALJ had a duty to determine whether Plaintiff's mental impairment was severe, and if the ALJ lacked sufficient information, she should have ordered supplementation of the record and/or a consultative examination.  See Guerrero v. Astrue, 2009 U.S. Dist. LEXIS 23784, at * 25-29 (D. Haw. Feb. 13, 2009) (explaining that although the plaintiff never alleged a mental impairment and her representative did not question her about a mental impairment, two reports indicating a possible mental impairment were sufficient to trigger the ALJ's duty to

develop the record); Xiong v. Astrue, 2009 WL 737030 (E.D. Cal. March 19, 2009) (remanding case because ALJ failed to address plaintiff's alleged depression and develop the record in this regard, and directing ALJ to order a psychiatric consultative examination of plaintiff); Pelletier v. Colvin, 2015 WL 5999214 (C.D. Cal. Oct. 13, 2015) (holding that the presence of records identifying mental health issues in addition to plaintiff's testimony triggered the ALJ's duty to conduct an appropriate inquiry).

Accordingly, the Court remands this matter to the ALJ to conduct a proper review regarding whether Plaintiff's mental impairment is severe, and if so, whether it meets or equals a listed impairment. If the record is inadequate for the ALJ to properly evaluate the evidence, the ALJ must conduct an appropriate inquiry.

### 2. Plaintiff's Dyspnea/Asthma

The ALJ did not make any reference to Plaintiff's dyspnea/asthma at step two or otherwise. As set forth above, the medical records show that Plaintiff was treated on several occasions for dyspnea/asthma, and he reported that he had experienced shortness of breath for several years on and off.

Defendant argues that the identification of Plaintiff's dyspnea/asthma as severe or non-severe was irrelevant because "the ALJ considered the functional effect of all of his impairments, severe and non-severe." (Doc. 23 at 9:10-13.)

1  Defendant further argues that because no physician found any limitations as a
2  result of Plaintiff's asthma, Plaintiff had no functional limitations and the ALJ
3  properly excluded them from the list of severe impairments and the residual
4  functional capacity assessment. (Id. at 9:24-10:3.)

5  However, there is no indication in the record that the ALJ determined one
6  way or the other whether Plaintiff's dyspnea/asthma resulted in functional
7  limitations. Furthermore, the lack of findings by a physician that Plaintiff's
8  dyspnea/asthma resulted in functional limitations does not mean that Plaintiff in
9  fact had no functional limitations. In May 2012, Plaintiff complained of shortness
10 of breath going up stairs and walking 25-30 minutes despite his medications.
11 Whether he continued to have these issues or whether his condition got better or
12 worse is unclear.

13 Because there is no evidence that the ALJ gave any consideration
14 whatsoever to Plaintiff's dyspnea/asthma when performing her disability
15 determination, the Court also directs the ALJ upon remand to make appropriate
16 findings regarding the severity of Plaintiff's dyspnea/asthma and any resulting
17 functional limitations.

18 //
19 //
20 //

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment [Doc. 19] is **GRANTED** and Defendant's motion for summary judgment [Doc. 23] is **DENIED**. The Commissioner's decision is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated:  March 30, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court