1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

9  | EFREN RICARDO MARTINEZ,
10 |                            Plaintiff,
11 | v.
12 | CAROLYN W. COLVIN, Acting
   | Commissioner of Social Security,
13 |                            Defendant.
14

Case No.:  14cv3043 BTM(WVG)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES**

**[ECF NO. 33]**

15
16        In this Social Security appeal, Plaintiff Efren Ricardo Martinez ("Plaintiff")
17   prevailed on his summary judgment motion and now moves for attorney's fees
18   pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  Pl.'s
19   Mot. Atty. Fees ("Pl.'s Mot.") (ECF No. 33).  The Commissioner of Social Security
20   ("Commissioner" or "Defendant") opposes the motion.  Def.'s Opp. Pl.'s Mot.
21   (ECF No. 36).  For the reasons set forth below, Plaintiff's motion will be
22   GRANTED IN PART and DENIED IN PART.

23   **I.    BACKGROUND**

24        On December 31, 2014, Plaintiff filed this action seeking judicial review of a
25   final decision by the Commissioner denying Plaintiff's application for disability
26   and disability insurance benefits.

27        On July 27, 2015, Plaintiff filed a motion for summary judgment seeking
28   reversal and remand of the decision of the Administrative Law Judge ("ALJ")

below, on the basis of three alleged errors she committed in the course of administrative proceedings.  First, he contended that at step two of the ALJ's sequential analysis of his disability claim,[1] she failed to consider that his medical records contained evidence indicating he suffered from a mental impairment as well as asthma/dyspnea.  Second, he argued the ALJ erred in finding that his allegations of back pain and lack of mobility were not credible.  Third, he maintained the ALJ's determinations at steps four and five of the sequential analysis were not supported by substantial evidence because they failed to account for his mental impairment and asthma.

On October 15, 2015, Defendant filed on opposition to Plaintiff's motion as well as a cross-motion for summary judgment asking the Court to affirm the ALJ's denial of disability benefits.

On March 30, 2016, the Court issued an order granting Plaintiff's motion for summary judgment, denying Defendant's motion for summary judgment, vacating the decision of the ALJ, and remanding the action for further proceedings.  Order Granting Pl.'s Mot. Summ. J. at 14 (ECF No. 26).  The Court found that at step two of the sequential analysis, the ALJ erroneously failed to consider the evidence of Plaintiff's mental impairment and asthma.  In holding that the error required remand for further proceedings, the Court noted that the ALJ's failure to consider Plaintiff's mental impairment and asthma occurred throughout the sequential analysis.  It stated that the "ALJ did not make any reference to

---

[1] "Disability claims are evaluated using a five-step sequential analysis. 20 C.F.R. § 404.1520. In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff's dyspnea/asthma at step two or otherwise." The Court noted that the ALJ failed to follow the procedures in 20 C.F.R. § 404.1520a that govern assessment of a mental impairment, including the ALJ's failure to complete a Psychiatric Review Technique Form ("PRTF").  Also, the ALJ "did not make any mention of Plaintiff's mental impairment, let alone make findings consistent with 20 C.F.R. § 404.1520a."  Id. at 10-11.  With regard to the ALJ's allegedly erroneous credibility determination, the Court found that "[b]ecause the Court reverses the ALJ's decision and remands based on the ALJ's failure to give proper consideration to Plaintiff's mental impairment and dyspnea/asthma, there will be a new hearing, and the Court finds it unnecessary to reach the credibility issue."  Id. at 5 n.2.

On June 15, 2016, Plaintiff filed a motion for attorneys' fees pursuant to the EAJA, which the Court denied without prejudice as premature, since it was filed before entry of judgment.  (ECF Nos. 27, 32.)

On July 18, 2016, the clerk entered judgment in favor of Plaintiff.  Clerk's J. (ECF No. 31.)  On August 17, 2016, Plaintiff filed this timely motion for attorney's fees pursuant to the EAJA, seeking a total of $7,985.68 in legal fees, and $15.39 in litigation costs, incurred in pursuing this action.  Defendant opposes the motion on the ground that the government's position was substantially justified, such that fees are not recoverable under the EAJA.  Alternatively, if the Court finds Plaintiff merits recovery of fees, Defendant argues the amount he seeks should be reduced because it is unreasonable.

**II.    DISCUSSION**

A. Substantial Justification

Pursuant to the EAJA,

a court shall award to a prevailing party other than the United States fees and other expenses . . . , incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . ,

14cv3043 BTM(WVG)

1

2

unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

3

28 U.S.C. § 2412(d)(1)(A).

4

5

6

7

8

9

10

11

12

13

14

15

If the claimant wins at any intermediate stage of the proceedings, he is considered a "prevailing party" under the EAJA even though there has not been an ultimate disposition of the disability claim. Corbin v. Apfel, 149 F.3d 1051, 1053 (9th Cir. 1998). Here, the parties do not dispute that the Court's order remanding the case to the ALJ for further findings and redetermination of disability renders Plaintiff a prevailing party for purposes of the instant motion. See id. ("a party is eligible for fees under EAJA if he wins at any intermediate stage in the proceedings," including "by obtaining a remand"); Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002) ("A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorneys' fees… even when the case has been remanded for further administrative action") (citing Shalala v. Schaefer, 509 U.S. 292, 301-02 (1993)).

16

17

18

19

20

21

22

23

24

25

Instead, the parties' arguments focus on whether "the position of the United States was substantially justified" within the meaning of the EAJA such that Plaintiff's motion for fees should be denied. See 28 U.S.C. § 2412(d)(1)(A). A "substantially justified" position is one that has a reasonable basis both in law and in fact. Pierce v. Underwood, 487 U.S. 552, 565 (1988). "Substantial justification does not mean 'justified to a high degree,' but simply entails that the government must show that its position meets the traditional reasonableness standard - that it is 'justified in substance or in the main,' or 'to a degree that could satisfy a reasonable person.'" Corbin, 149 F.3d at 1052 (quoting Underwood, 487 U.S. at 565).

26

27

28

"The government bears the burden of demonstrating substantial justification." Thangaraja v. Gonzales, 428 F.3d 870, 874 (9th Cir. 2005). To meet its burden, the government must demonstrate that its position "*as a whole*

1  [was] substantially justified," <u>Gutierrez v. Barnhart</u>, 274 F.3d 1255, 1258-59 (9th

2  Cir. 2001) (emphasis in original), meaning it must show its conduct was justified

3  at "each stage of the proceedings." <u>Corbin</u>, 149 F.3d at 1052.  Accordingly, to

4  meet its burden, the government must show both that the ALJ was substantially

5  justified in her conduct below, and that it was substantially justified in "its litigation

6  position defending the ALJ's error." <u>Gutierrez</u>, 274 F.3d at 1259.  If the

7  government fails to establish that the ALJ's conduct was substantially justified,

8  the court "[must award fees and] need not address whether the government's

9  litigation position was justified." <u>Tobeler v. Colvin</u>, 749 F.3d 830, 832 (9th Cir.

10  2014) (bracketed language in original) (quoting <u>Meier v. Colvin</u>, 727 F.3d 867,

11  870 (9th Cir. 2013)).

12      Here, the Court found the ALJ erred by not addressing Plaintiff's dyspnea/

13  asthma at step two "or otherwise," by failing to "make any mention of Plaintiff's

14  mental impairment," let alone applying the procedures required for evaluating a

15  mental impairment.  The Court thus remanded to the ALJ so she could "conduct

16  a proper review regarding whether Plaintiff's mental impairment is severe, and if

17  so, whether it meets or equals a listed impairment," and "to make appropriate

18  findings regarding the severity of Plaintiff's dyspnea/asthma and any resulting

19  functional limitations."  Order Granting Summ. J. at 5, 12, 13.  In the Ninth Circuit,

20  the failure of an ALJ to make required findings and weigh evidence are generally

21  regarded as "basic and fundamental errors," the defense of which is "difficult to

22  justify." <u>Corbin</u>, 149 F.3d at 1053; <u>see</u> <u>Shafer v. Astrue</u>, 518 F.3d 1067, 1071-72

23  (9th Cir. 2008) (errors such as failing to provide clear and convincing reasons for

24  rejecting a treating physician's opinion are "fundamental procedural errors").

25  "The failure of ALJs to make such findings in disability cases is among the

26  principal causes of delay and uncertainty in this area of the law." <u>Murray v.</u>

27  <u>Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983) (quoting <u>Chiappa v. Sec'y of Dept. of</u>

28  <u>HEW</u>, 497 F. Supp. 356, 358 (S.D.N.Y. 1980)).  Where an ALJ commits such

errors, "[i]t follows *a fortiori* the government's defense of the ALJ's procedural errors was not substantially justified, and [plaintiff] is entitled to attorneys' fees under the EAJA."  Shafer, 518 F.3d at 1072.  Here, the failure of the ALJ "to conduct a proper review regarding whether Plaintiff's mental impairment is severe, and if so, whether it meets or equals a listed impairment," and "to make appropriate findings regarding the severity of Plaintiff's dyspnea/asthma and any resulting functional limitations" fall within the category of procedural errors the Ninth Circuit regards as "serious" and "fundamental," and, therefore, difficult to justify.  See Corbin, 149 F.3d at 1053; Shafer, 518 F.3d at 1071-72.

Against this backdrop, the government attempts to demonstrate substantial justification.  The government's first argument is that it was substantially justified in defending the ALJ because neither Plaintiff nor his counsel raised the issue of his mental impairment or asthma below, and "[u]nder similar circumstances, … the Ninth Circuit has held that the claimant had waived the argument."  Def.'s Opp. at 6:2-20, citing Harshaw v. Colvin, 616 Fed. Appx. 316 (9th Cir. 2015).  Plaintiff counters that the government never asserted the defense of waiver when attempting to defend the ALJ's decision on the merits, and moreover, under Silveira, the government cannot rely on the waiver doctrine to justify its defense of a serious procedural errors like that of the ALJ below.  Pl.'s Reply at 3:3-21 (ECF No. 37).

The Court agrees with Plaintiff that Defendant's waiver argument misses the mark.  In the course of defending the ALJ's errors, Defendant never raised a waiver defense.  See Def.'s Opp. Pl.'s Mot. Summ. J. at 8-10, 15-16 (ECF No. 22); Def.'s Cross-Mot. for Summ. J. at 8-10, 15-16 (ECF No. 23).  At the outset, the government's effort to establish that its litigation position was substantially justified based on the merits of a litigation position it never actually asserted does not strike the Court as particularly logical or persuasive.  The government has not cited a case holding the government may demonstrate substantial justification

based on what is effectively an extraneous defense.

Even assuming the government may rely on a new argument to show substantial justification for its defense of the ALJ, its effort fails because the argument itself lacks merit.  Defendant describes the Court's remand order as having found the ALJ erred only at step two.  Defendant then cites to an unpublished case—Harshaw v. Colvin, 616 Fed. Appx. 316, 316 (9th Cir. 2015) (mem.)—in which the Ninth Circuit held that an ALJ's failure to consider particular impairments at step two "is a finding of fact and not a pure question of law for which the waiver rule may be excused."  Harshaw, 616 Fed. Appx. at 316.  Based on its characterization of the Court's order as being limited to finding error at step two only, and the unpublished decision in Harshaw, the government contends that because Plaintiff failed to raise the issues of his mental impairment or asthma below, under Harshaw, the Court could have found the claim was waived.

This argument is flawed.  First, its premise is partly incorrect, because contrary to the government's contention, Plaintiff's medical expert advised the ALJ during the administrative hearing that asthma was his second most severe impairment, so it is not the case that Plaintiff failed to raise that impairment below.  Pl.'s Reply at 6-7.[2]  Second, the argument fails because the government's characterization of the Court's remand order is too limited.  Although the Court's analysis focused on the ALJ's errors at step two, the ALJ's failings occurred in the broader context of a wholesale failure to give any consideration to Plaintiff's mental impairment or asthma/ dyspnea throughout the sequential analysis.  Specifically, the Court found the ALJ failed to "make any

---

[2]  He did, however, fail to raise the issue of his mental impairment.  The Court found his failure to do so did not mean the ALJ did not need to address that impairment, as the ALJ had an independent duty to fully and fairly develop the record and to assure that his interests were considered.  Order Granting Summ. J. at 11 (citing Tonapetyan v. Halter, 242 F.3d 1133, 1150 (9th Cir. 2001).

14cv3043 BTM(WVG)

reference to Plaintiff's dyspnea/asthma at step two or otherwise," creating a need for remand in order for the ALJ "to make appropriate findings regarding the severity of Plaintiff's dyspnea/asthma and any resulting functional limitations." Order Granting Summ. J. at 12, 13.  Similarly, the Court found that "[t]he ALJ did not make any mention of Plaintiff's mental impairment, let alone make findings consistent with 20 C.F.R. § 404.1520a," requiring remand so she could address the severity of the impairment, supplement the record if necessary, and determine "whether it meets or equals a listed impairment."  Id. at 10-11, 12.

Because the ALJ's errors in failing to give consideration to all of Plaintiff's impairments were not limited to step two, they were not mere factual issues potentially subject to waiver under Harshaw.  Rather, the ALJ's errors represented a wider-ranging failure to give appropriate consideration to the record and make required findings, errors which, as discussed above, are generally construed as "fundamental procedural errors."  Shafer, 518 F.3d at 1071-72.  In the Ninth Circuit, such errors may be raised for the first time on appeal.  Silveira, 204 F.3d at 1260 n.8; see Kokal v. Massanari, 163 F. Supp. 2d 1122, 1128 n.4 (N.D. Cal. 2001) ("the Ninth Circuit has allowed plaintiffs in social security cases to raise legal issues for the first time in court…"); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (issue deemed waived where it required consideration of new statistical evidence presented for the first time on appeal).

The government's next argument in an effort to establish substantial justification is based on Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), a case in which the Ninth Circuit engaged in harmless error analysis to affirm the ALJ's denial of benefits.  The government argues that under Burch, because Plaintiff prevailed at step two of the sequential analysis, he could not have been prejudiced by the ALJ's failure to consider additional impairments at step two, so the ALJ's error at that step could have been deemed harmless error.  Def.'s Opp. at 6-7.  Plaintiff responds that Burch is inapposite to the facts of this case.  Pl.'s

1  Reply at 5.  The Court agrees with Plaintiff.

2  In <u>Burch</u>, the claimant argued that in performing the sequential analysis,

3  the ALJ erroneously failed to properly consider her obesity, including by failing at

4  step two to consider the interactive effects her obesity had on her other

5  impairments to determine whether they met or equaled a severe impairment.

6  <u>Burch</u>, 400 F.3d at 681-82.  The Ninth Circuit agreed the ALJ had failed to

7  address claimant's obesity at step two, which it "[a]ssum[ed] without deciding …

8  constituted legal error."  <u>Id.</u> at 682.  The court found this error could only have

9  prejudiced the claimaint at steps three and five, as those were the only steps that

10  were not resolved in the claimant's favor.  <u>Id.</u> at 682.  At step five (residual

11  functional capacity ("RFC")), the ALJ had, in fact, expressly considered the

12  claimant's obesity before resolving that step against the claimant by finding she

13  had the RFC to perform light work, a determination the Ninth Circuit found was

14  supported by the record.  <u>Id.</u> at 684.  Although the ALJ did not discuss claimant's

15  obesity at step three (whether impairments combine to equal a listed

16  impairment), the court found the ALJ was not required to do so, because the

17  claimant's medical records did not show her obesity affected any of her other

18  impairments.  <u>Id.</u> at 682-83.  Accordingly, the Ninth Circuit held that the ALJ had

19  properly considered claimant's obesity at steps three and five "to the extent

20  required based on the record," such that the ALJ's failure to address her obesity

21  at step two was harmless error.  <u>Id.</u> at 682, 684.

22  In this case, the extent of the ALJ's errors in failing to consider the record of

23  Plaintiff's impairments was far broader than the error alleged in <u>Burch</u>.  Here, the

24  Court determined that the ALJ "did not make any mention of Plaintiff's mental

25  impairment, let alone make findings consistent with 20 C.F.R. § 404.1520a,"

26  despite the fact that Plaintiff's records established a colorable claim of mental

27  impairment.  Order Granting Pl.'s Mot. Summ. J. at 10-11.  The Court also found

28  the ALJ failed to "make any reference to Plaintiff's dyspnea/asthma at step two or

9

otherwise," creating a need for remand in order for the ALJ "to make appropriate findings regarding the severity of Plaintiff's dyspnea/asthma and any resulting functional limitations."  Order Granting Summ. J. at 12, 13.  Thus, unlike <u>Burch</u>, not only did the ALJ fail to address all of Plaintiff's impairments at step two; she also failed to consider them at all.  It is simply not a case in which the Court could have found, as did the Ninth Circuit in <u>Burch</u>, that the ALJ considered Plaintiff's impairments "to the extent required based on the record," and therefore her decision was not one that potentially could have been affirmed as harmless error. <u>See</u> <u>Corbin</u>, 149 F.3d at 1053 ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of a claim").

Finally, the government tries to show it was substantially justified in defending the ALJ's failure to address Plaintiff's asthma/dyspnea at step two by arguing that Plaintiff's condition was not severe enough to support a finding of a severe impairment at that step.  Def.'s Opp. at 7.  In support of this argument, the government relies on cases in which, unlike this case, the ALJ actually did discuss the impairment at issue before resolving step two against the claimant. <u>See</u> <u>id.</u> (citing <u>Sadeeq v. Colvin</u>, 607 Fed. Appx. 629, 631 (9th Cir. 2015) (ALJ determined at step two that claimant's gout was not a severe impairment); <u>Thune v. Astrue</u>, 499 Fed. Appx. 701, 703 (9th Cir. 2012) (ALJ determined at step two that Thune's depression was not severe); <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999) (ALJ found Verduzco's impairments were not severe).  Here, by contrast, the Court found "there is no evidence that the ALJ gave <u>any</u> <u>consideration whatsoever</u> to Plaintiff's dyspnea/asthma when performing her disability determination…."  Order Granting Pl.'s Mot. Summ. J. at 13 (emphasis added).  Thus, this case is not controlled by the cases cited by Defendant.  Rather, this case is governed by <u>Corbin</u>, pursuant to which the ALJ's error constituted a "failure to make findings and weigh evidence," a serious procedural error the defense of which is "difficult to justify."  <u>Corbin</u>, 149 F.3d at 1053.

14cv3043 BTM(WVG)

The Court finds the government has not shown substantial justification either for the ALJ's failure to consider Plaintiff's dyspnea/asthma below, or for its defense of the ALJ's errors in these proceedings.  The government bears the burden of proving that both the ALJ's decision below, as well as its litigation position in defending the ALJ's decision, were substantially justified.  <u>Gutierrez</u>, 274 F.3d at 1259.  As the government has not met its burden, the Court concludes that Plaintiff is entitled to attorneys' fees and costs under the EAJA.

### B. <u>Reasonableness of Fees</u>

Plaintiff seeks a total of $7,985.68 in attorney and paralegal fees, and $15.39 in litigation costs, incurred in pursuing this action.  Defendant maintains this amount is unreasonable.

An award of fees under the EAJA must be reasonable.  28 U.S.C. § 2412(d)(2)(A).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonable expended on the litigation multiplied by a reasonable hourly rate."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  The resulting figure, the lodestar figure, forms the basis for the remainder of the court's determination of the reasonableness of the requested fees.  <u>Ibrahim v. U.S. Dep't of Homeland Sec.</u>, 835 F.3d 1048, 1060 (9th Cir. 2016).  However, that figure may be adjusted, where, for example, the plaintiff only achieved limited success, <u>see</u> <u>id.</u>, or to account for hours that the court deems "excessive, redundant, or otherwise unnecessary," <u>Hensley</u>, 461 U.S. at 434.

### 1. <u>Attorneys' Fees</u>

In his opening brief, Plaintiff indicates that he seeks recovery of $6,212.64 in attorneys' fees, based on 32.65 hours of work an hourly rate of $190.28.  Aff. in Supp. Fees ¶ 5 (ECF No. 33-1).  This hourly rate is based on the $125 per hour rate set forth in 28 U.S.C. § 2412(d)(2)(A), adjusted for cost-of-living increases.  <u>Thangaraja</u>, 428 F.3d at 876-77.  Defendant does not challenge this

rate, which the Court finds to be reasonable.

### a. *Hensley* Analysis

Defendant argues Plaintiff's recovery should be reduced to reflect his limited success.  "[W]here a plaintiff has only achieved limited success, not all hours expended on the litigation are eligible for inclusion in the lodestar, and even those that are eligible may be subject to a discretionary reduction."  Ibrahim, 835 F.3d at 1060; see Hensley, 461 U.S. at 440 ("The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees….").  In cases of partial success, the Ninth Circuit requires district courts to follow a two-step process which is sometimes referred to as "Hensley analysis" after the Supreme Court case on which it is based.  Ibrahim, 835 F.3d at 1060.  "[F]irst, the court must determine whether the claims upon which the plaintiff prevailed are related to the unsuccessful claims."  Id. at 1060-61 (citing Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003)).  "That inquiry rests on whether the 'related claims involve a common core of facts or are based on related legal theories.'"  Id. at 1061 (quoting Webb, 330 F.3d at 1168).  Time spent on unsuccessful but related claims is to be included in the lodestar, but "'[h]ours expended on unrelated, unsuccessful claims should not be included' to the extent those hours can be 'isolated.'"  Id. (quoting Webb, 330 F.3d at 1168, 1169).  "Thus, … potentially recoverable under *Hensley* are those hours expended on related but unsuccessful claims as well as those hours pertaining to unrelated, unsuccessful claims that cannot be severed cleanly from the whole."  Id.

The second step requires the district court to "consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  Id. (citation and internal quotation marks omitted).  "Here, a district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended

1  on the litigation." Id. (citation and internal quotation marks omitted).  At this step,

2  a district court may apply a downward adjustment by "award[ing] only that

3  amount of fees that is reasonable in relation to the results obtained," id. (quoting

4  Hensley, 461 U.S. at 440), including to account for hours spent on unsuccessful

5  claims that could not be isolated or "severed cleanly from the whole" in the

6  context of the first Hensley step.  Webb, 330 F.3d at 1169.

7        The Court agrees with Defendant that Plaintiff achieved partial success,

8  and that it must consider whether a reduction in his recovery is appropriate under

9  Hensley.  Plaintiff asserted the following claims regarding the ALJ's denial of

10  disability benefits:  (1) the ALJ erred by failing to find Plaintiff's mental

11  impairments and asthma severe at step two; (2) the ALJ's credibility

12  determination was erroneous and unsupported by substantial evidence; and (3)

13  the ALJ's step four and step five determinations were unsupported by substantial

14  evidence.  Pl.'s Mot. Summ. J. at 2.  The Court did not reach the second issue,

15  reasoning that "[b]ecause the Court reverses the ALJ's decision and remands

16  based on the ALJ's failure to give proper consideration to Plaintiff's mental

17  impairment and dyspnea/asthma, there will be a new hearing, and the Court finds

18  it unnecessary to reach the credibility issue."  Order Granting Summ. J. at 5 n.2.

19        Since the Court did not rule on the credibility issue, although it is not a

20  claim Plaintiff lost, it is not one on which he can be considered to have prevailed.[3]

21  Under the first step of the Hensley analysis, the Court must therefore determine

22  whether the credibility issue is related to the claims on which he succeeded.

23

24  _____

25  [3]  Although in its order granting Plaintiff's motion for summary judgment, the Court did not focus a significant portion of its analysis on Plaintiff's third claim, it found the ALJ "did not make any mention of Plaintiff's mental impairment, let alone make findings consistent with 20 C.F.R. § 404.1520a."  Order Granting Summ. J. at 10-11.

26  The Court similarly found that the ALJ failed to give "any consideration whatsoever" to Plaintiff's dyspnea/asthma, including whether it was severe or resulted in functional limitations, the latter of which is a step five determination.

27  Id. at 13.  Plaintiff's fees in connection with litigating his third claim are recoverable to the extent its ruling can be construed as rendering him the prevailing party on that claim, and independently, because the third claim was factually and legally related to the first claim for purposes of the first step of the Hensley analysis.  See Webb, 330

28  F.3d at 1169.

Ibrahim, 835 F.3d at 1060.  This requires the court to decide whether the successful and unsuccessful claims "involve a common core of facts or are based on related legal theories."  Ibrahim, 835 F.3d at 1061.  "[C]laims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually."  Webb, 330 F.3d at 1169 (quoting Schwarz, 73 F.3d at 901, 902) (emphasis in original).  Here, the Court finds that the credibility issue was unrelated to Plaintiff's successful claims.  The appeal of the ALJ's credibility determination was based on her determination that Plaintiff's allegations of limited mobility and back pain were not credible, a claim that did not overlap factually or legally with his successful claims regarding the ALJ's failure to address his mental impairment and asthma.  See Pl.'s Mot. Summ. J. at 21-24.  Accordingly, the credibility claim was not "related to" Plaintiff's successful claims.

That does not end the step one inquiry, however, because the Court must also determine whether the time spent on Plaintiff's credibility claim can be isolated from the time spent on his successful claims.  "[P]otentially recoverable under *Hensley* are those hours expended on related but unsuccessful claims as well as those hours pertaining to unrelated, unsuccessful claims that cannot be severed cleanly from the whole."  Ibrahim, 835 F.3d at 1061.  In reviewing the time sheets submitted in support of Plaintiff's motion, the Court sees that Plaintiff's attorneys and paralegals billed for litigation tasks such as "review of transcript" and "complete drafting of brief"—tasks which likely addressed the successful and unsuccessful claims simultaneously—such that it is not possible to isolate the time his counsel devoted to the credibility issue.  See Pl.'s Ex. A (time ledger) (ECF No. 33-2).  Since the time spent on the credibility issue cannot be "severed cleanly from the whole," it remains potentially recoverable at the conclusion of the first step of the Hensley analysis.  Ibrahim, 835 F.3d at 1061.

The Court thus turns to the second step, which requires it to determine whether "the plaintiff achieve[d] a level of success that makes the hours

1  reasonably expended a satisfactory basis for making a fee award." <u>Sorenson</u>,
2  239 F.3d at 1147 (quoting <u>Hensley</u>, 461 U.S. at 434).  "Where a plaintiff has
3  obtained excellent results, his attorney should recover a fully compensatory fee."
4  <u>Hensley</u>, 461 U.S. at 435.  At this step, the district court may adjust to account for
5  a party's limited success where it was "impossible to isolate the truly unrelated
6  claims from those related claims" at step one.  <u>Webb</u>, 330 F.3d at 1169.
7  However, such a downward adjustment is not required, because a plaintiff may
8  obtain excellent results meriting full recovery of fees even though he did not
9  receive all the relief requested.  <u>Id.</u> at 435 n.11.  Moreover, "the fee award should
10 not be reduced simply because the plaintiff failed to prevail on every contention
11 raised in the lawsuit."  <u>Id.</u>

12       Defendant contends the amount of time spent by Plaintiff's counsel was
13 unreasonable, but apart from characterizing this as a "very simple case," does
14 not provide any argument explaining why the hours were excessive.  The Court
15 is not persuaded.  The number of attorney hours expended in this case, 32.65, is
16 within the ballpark of what is ordinarily considered reasonable in social security
17 disability appeals—even relatively simple ones.  <u>See, e.g.</u>, <u>Harden v. Comm'r of</u>
18 <u>Soc. Sec. Admin.</u>, 497 F. Supp. 2d 1214, 1215 (D. Or. 2007) ("There is some
19 consensus among the district courts that 20-40 hours is a reasonable amount of
20 time to spend on a social security case that does not present particular
21 difficulty."); <u>Patterson v. Apfel</u>, 99 F. Supp. 2d 1212,1215 n.2 (N.D. Cal. 2000).

22       Next, the Court considers whether plaintiff obtained "excellent results"
23 meriting a full award of fees, or whether the amount should be reduced to reflect
24 limited success—i.e., that he did not prevail on his credibility claim.  Several
25 district courts, in determining the appropriate amount of legal fees to award in
26 social security disability cases, have resisted making downward adjustments to
27 account for the fact that the case was remanded on the basis of fewer than all of
28 the claims asserted.  <u>See, e.g.</u>, <u>Hanif v. Astrue</u>, 2012 U.S. Dist. LEXIS 37747, at

*6 (W.D. Wash. Feb. 14, 2012) ("Ms. Hanif should not be denied attorney fees where she raised meritorious claims that the Court did not address and did not rely on in remanding the matter."); <u>Hampton v. Colvin</u>, 2015 U.S. Dist. LEXIS 53630, at *17-18 (N.D. Cal. Apr. 23, 2015) ("although Plaintiff raised two arguments on remand, these arguments supported one claim for relief to this Court: a claim for disability benefits on appeal"); <u>Trefcer v. Colvin</u>, 2013 U.S. Dist. LEXIS 176410, 2013 WL 6623823, at *4-5 (E.D. Cal. Dec. 16, 2013) ("Social Security appeals are akin to a single claim for relief based on one set of facts and involving related legal theories"); <u>Williams v. Astrue</u>, 2012 U.S. Dist. LEXIS 115052, 2012 WL 3527224, at *3-4 (D. Or. June 26, 2012) (awarding fees where plaintiff presented multiple arguments, not all of which were successful, but were all in support of one claim for relief: a claim for disability benefits through reversal and remand), report and recommendation adopted, 2012 U.S. Dist. LEXIS 114896, 2012 WL 3527207 (D. Or. Aug. 15, 2012); <u>Jackson v. Astrue</u>, 2011 U.S. Dist. LEXIS 73499, *16 (D. Or. June 28, 2011) ("Plaintiff's mission in bringing this case before this court was to seek reversal and remand of the ALJ's decision. Notwithstanding that plaintiff prevailed on only one claim, the ultimate result achieved was an accomplishment of that mission, and thus plaintiff obtained an excellent result.").

The Court finds the reasoning in these cases persuasive.  As in the foregoing cases, Plaintiff achieved the relief he requested in this case (reversal and remand for further administrative proceedings) despite not prevailing on the credibility issue.  Although the Court did not reverse the ALJ's credibility determination, it did not find a need to reach the issue since the bases on which it did remand required the ALJ to conduct a new hearing.  It is possible, on remand, that the ALJ will view the issue differently and resolve it in his favor. Also, Defendant filed a cross-motion for summary judgment in which she sought an order affirming the ALJ on every issue Plaintiff asserted in his motion as

1  reversible error, including the credibility issue, and the Court denied the cross-

2  motion in its entirety.  Accordingly, the Court finds that the results Plaintiff

3  achieved here were sufficiently substantial so as to justify a full award of fees

4  under Hensley.  Anderson v. Colvin, 2016 U.S. Dist. LEXIS 31167, at *14 (W.D.

5  Wash. Mar. 9, 2016) ("The Court finds the relief plaintiff received — reversal and

6  remand for further administrative proceedings — constitutes substantial relief that

7  is not so limited as to warrant a reduction in attorney fees merely because she

8  did not obtain her primary form of requested relief.")

9          b. Duplicative Hours

10         Defendant argues that some of the time billed by Plaintiff's counsel was

11  excessive or duplicative.  Hours that are excessive, redundant, or otherwise

12  unnecessary should be excluded from an award of fees.  Hensley, 461 U.S. at

13  434.  The Court agrees in part.  The following time entries will be reduced as

14  duplicative:

15  • 3/19/2015:  attorneys Paul B. Eaglin ("Eaglin") and Lawrence D.
       Rohlfing ("Rohlfing") each billed 0.1 hours (total of 0.2 hours) for
16     review of a "notice of appearance" (Ex. A at 3).  The Court reduces
17     these duplicative entries to 0.1 hours;

18  • 4/28/2015:  attorneys Eaglin and Rohlfing billed 0.3 hours and 0.1
19     hours, respectively (total of 0.4 hours) for review of a scheduling
20     order (Ex. A at 3).  The Court reduces these duplicative entries to 0.1
       hours total;
21
22  • 5/4/2015:  attorneys Eaglin and Rohlfing each billed 0.1 hours (total
       of 0.2 hours) for review of an "order vacating briefing schedule" (Ex. A
23     at 3).  The Court reduces these duplicative entries to 0.1 hours total;

24
25  • 8/31/2015 and 9/1/2015:  attorneys Eaglin and Rohlfing billed 0.3
       hours and 0.1 hours, respectively (total of 0.4 hours) for review of an
26     order granting a joint motion for extension of time (Ex. A at 4).  The
27     Court reduces these duplicative entries to 0.1 hours total;

28  //

17

- <u>10/15/2015</u>:  attorneys Eaglin and Rohlfing billed 0.8 hours and 0.05 hours, respectively (total of 0.85 hours) for review of the Defendant's cross-motion for summary judgment (Ex. A at 4).  The Court reduces the entries to 0.5 hours total because they are both duplicative and excessive.

The total time reduced from the above entries is **1.15 hours**.  Apart from these reductions, the Court otherwise rejects Defendant's contention that Plaintiff's representation by multiple attorneys and paralegals automatically resulted in duplicative work.  Defendant does not cite specific examples, and on its own review, the Court finds her contention is not borne out by the time entries submitted in support of Plaintiff's motion.

    c. <u>Reply Brief</u>

  Plaintiff has requested an additional 3.7 hours for time spent preparing his reply brief in support of the instant motion.  The Court views this as a reasonable amount and will include it in the fee award.

    d. <u>Summary—Attorneys' Fees</u>

  For the reasons discussed above, the Court will grant Plaintiff a recovery of 35.2 hours of attorney time (32.65 hours reduced by 1.15 hours = 31.5 hours, plus 3.7 hours for the reply brief) which, multiplied by the rate of $190.28 per hour, comes to an award of **$6,697.86** in attorneys' fees.

//
//
//
//
//
//
//
//
//

1

2    ## 2. Paralegal Fees

3    Plaintiff also seeks paralegal fees at a rate of $100 per hour.  The EAJA

4    permits compensation for paralegals that are in line with rates "in the community

5    for similar services by paralegals of reasonably comparable skill, experience and

6    reputation." Nadarajah v. Holder, 569 F.3d 906, 918 (9th Cir. 2009); Richlin Sec.

7    Serv. v. Chertoff, 553 U.S. 571, 578, 588-89 (2008) (paralegal fees may be

8    awarded at prevailing market rates under the EAJA).  Although Defendant does

9    not object to Plaintiff's requested paralegal rate, the Court still must determine

10   whether it is reasonable for purposes of the EAJA.  Ibrahim, 835 F.3d at 1060;

11   see Hampton v. Colvin, 2015 U.S. Dist. LEXIS 53630, at *15 (N.D. Cal. Apr. 23,

12   2015) (assessing reasonableness of plaintiff's requested paralegal rates despite

13   lack of objection from the Commissioner).  Courts generally assess the

14   reasonableness of a proposed paralegal rate based on the prevailing market rate

15   for paralegals in the local community, coupled with evidence of the education and

16   experience of the paralegals involved in the case.  See Hampton, 2015 U.S. Dist.

17   LEXIS 53630, at *15 (awarding paralegal fees based on evidence of median

18   billable hourly rate for a California consumer law firm's paralegal); Nadarajah,

19   569 F.3d at 918 (holding the EAJA permits compensation for paralegals that are

20   in line with rates "in the community for similar services by paralegals of

21   reasonably comparable skill, experience and reputation").  Here, however,

22   Plaintiff has provided no such evidence to support the reasonableness of his

23   requested paralegal rate, despite the fact that it is his burden to do so.  Hensley,

24   461 U.S. at 433 ("The party seeking an award of fees should submit evidence

25   supporting the hours worked and rates claimed.").

26   Rather than deny Plaintiff's request for paralegal fees altogether, the Court

27   will reduce them so they are consistent with a rate it regards as reasonable.

28   See, e.g., Denepita v. Colvin, 2014 U.S. Dist. LEXIS 146420, at *8 (E.D. Cal.

Oct. 14, 2014) (sua sponte reducing paralegal rate where Plaintiff failed to

14cv3043 BTM(WVG)

support requested rate because he "provided no information regarding the experience, skills, or reputations of the paralegals who worked on this matter"). The Judicial Council of the Ninth Circuit does not set maximum hourly paralegal rates under the EAJA.  However, it does publish budgeting policies for fair compensation of legal services under the Criminal Justice Act, 8 U.S.C. § 3006A ("CJA"), and in that context it has set $35-$60/hour as the approved rate for paralegals under the CJA.  Judicial Council of the Ninth Circuit, <u>Criminal Justice Act Policies and Procedures</u> (2016).  The maximum hourly rate the Ninth Circuit has set for attorneys under the CJA ($183/hour) is comparable to the maximum hourly rate for attorneys under the EAJA ($192.68/hour).  Since the hourly rate for attorneys is comparable under the EAJA and CJA, it seems reasonable to the Court to rely on the CJA paralegal rate to guide its compensation of Plaintiff's paralegals under the EAJA.  <u>Id.</u>, App'x 2.  Since awarding fees at the top of the range requires evidence of the advanced experience and skill set of the particular paralegal, <u>see id.</u> n.1, and the Court lacks any such evidence here, the Court will award Plaintiff's paralegal fees at the low end of the range, $35 per hour.

Next, Plaintiff seeks recovery of 10.75 hours of paralegal work.  Defendant contends the amount should be reduced to reflect his partial success.  The Court rejects this argument for the reasons discussed above.

Defendant also argues that some of the time billed by Plaintiff's paralegals should be deducted because it was for work that was purely clerical.  "Purely clerical or secretarial tasks should not be billed at a paralegal rate…."  <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n. 10 (1989).  The Court agrees with Defendant in part, as follows:

- The Court will reduce a 4/27/15 billing entry by paralegal Jessica Mills for 0.5 hours spent downloading, filing and saving a 13-part administrative transcript.  Pl.'s Mot. Att'y Fees, Ex. C at 3 [ECF No. 33-4].  This entry reflects a task that is partly clerical, but which also requires paralegal expertise.  The proper downloading of a multi-

volume administrative transcript, which is a critical case document, reasonably requires paralegal oversight to ensure it is completed correctly.  Therefore, rather than strike it entirely, the Court will reduce the entry to **0.2 hours**.

- The Court deducts the 8/7/2015 entry by paralegal Jacqueline Paparelli, who billed 0.3 hours for "Federal Court- FYI Memo of Law Mailed," as clerical work. Id.

Taking the reductions above into account (10.75 hours reduced by 0.6 hours), the Court approves recovery of **10.15 hours** of Plaintiff's paralegals' time at a rate of $35 per hour, for a total of **$355.25**.

### 3. Certified Mailing Expense

Plaintiff seeks **$15.39** for the cost of certified mailing of the summons and complaint.  Postage is a recoverable litigation expense under the EAJA.  See, e.g., Poole v. Rourke, 779 F. Supp. 1546, 1573 (E.D. Cal. 1991).  The Court approves this as a reasonable litigation expense.

### 4. Total Award

Adding up the amounts above, the total award approved by the Court is **$7,067.64** (**$6,697.86** in attorneys' fees plus **$355.25** in paralegal fees plus **$15.39** in certified mailing costs).

### 5. Payment to Plaintiff's Counsel

Plaintiff requests that the fee award be made payable to counsel, and has submitted a waiver of direct payment in support of that request.  Olinsky Aff. ¶ 10 (ECF No. 33-1), Ex. E (ECF No. 33-6).  Defendant argues that pursuant to Astrue v. Ratliff, 560 U.S. 586 (2010), the fee award must be payable to Plaintiff, not his attorney.  Under Ratliff, an EAJA fee award is normally awarded to the litigant, subject to any offset for applicable government debts.  Ratliff, 560 U.S. at 591-97.  Many district courts, however, have ordered payment of EAJA fees (minus any applicable offset) directly to the litigant's attorney when those fees have been

assigned in a fee agreement and the government has exercised its discretion to waive the requirements of the Anti-Assignment Act, 31 U.S.C. § 3727.  See, e.g., Yesipovich v. Colvin, 166 F. Supp. 3d 1000, 1011 (N.D. Cal. 2015).  Here, it appears that Defendant is prepared to waive the requirements of the Anti-Assignment Act if the United States Department of the Treasury determines that Plaintiff does not owe a government debt.  See Def.'s Opp. at 3-4.  Accordingly, the Court finds that EAJA fees may be paid directly to counsel, subject to any government debt offset and Defendant's waiver of the Anti-Assignment Act's requirements.

## III.  CONCLUSION AND ORDER

For the reasons discussed above, Plaintiff's motion for attorney's fees is **GRANTED IN PART** and **DENIED IN PART**.  The Court awards Plaintiff **$7,067.64**, to be paid to Plaintiff's counsel in accordance with the discussion above.

**IT IS SO ORDERED.**

Dated:  February 27, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court